### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **EDITH WALTON, as the surviving daughter of decedent, RHONDA WALTON**<br>Address:<br>1207 Duane Swift Pkwky, APT B<br>Jefferson City, MO 65109<br><br>               **Plaintiff,**<br><br>v.<br><br>**GEORGIAN GARDENS HEALTHCARE LLC**<br>Serve Registered Agent<br>Klein, Yaakov Y<br>231 S Bemiston Ave<br>Suite 1111<br>Clayton, MO 63105<br><br>**PRIME ADVISORY LLC**<br>Serve Registered Agent:<br>Klein, Yaakov Y<br>231 S Bemiston Ave<br>Suite 1111<br>Clayton, MO 63105<br><br>**GATEWAY HEALTHCARE OF MISSOURI LLC**<br>Serve:<br>Berger, Eliot<br>499 C 0 GULKO SCHWED LLP CHESTNUT ST # 202, CEDARHURST, NY 11516 (NASSAU COUNTY)<br><br>**MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE**<br>Serve Registered Agent:<br>COGENCY GLOBAL INC.<br>406 N Main St Ste B<br>Rolla, MO 65401-3154<br><br>               **Defendants.** | **Case No.  24-253**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFFS' COMPLAINT

The Plaintiff, by and through undersigned counsel, submit this Complaint for Damages against the above-named Defendants, and in further support, states and alleges as follows:

### PLAINTIFF

1.      Rhonda Walton ("Resident") died on May 22, 2023,, from an avoidable pressure ulcer and infection developed at GEORGIAN GARDENS HEALTHCARE LLC, a Missouri skilled nursing facility located at 1 Georgian Gardens Drive, Potosi, MO 63664 ("The Facility).

2.      Plaintiff, Edith Walton, is, and always relevant hereto, an adult over the age of 21 and a citizen of the state of Missouri.

3.      Decedent Rhonda Walton was a citizen of the state of Missouri at the time of her death.

4.      Decedent Rhonda Walton was a citizen of the state of Missouri at the time of her death.

5.      Edith Walton is a surviving child of Resident, and therefore, a member of the class of individuals authorized to pursue a wrongful death claim pursuant to RSMo. § 537.080.

### DEFENDANTS

6.      Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

## GEORGIAN GARDENS HEALTHCARE LLC

7.     At all times relevant, GEORGIAN GARDENS HEALTHCARE LLC was a Missouri limited liability company and owned, operated, managed, maintained, and/or controlled, in whole or in part, and did business as GEORGIAN GARDENS HEALTHCARE LLC ("Facility" or "the Facility") which is a Missouri licensed nursing.

8.     As such, GEORGIAN GARDENS HEALTHCARE LLC was engaged in providing ancillary medical services to persons requiring such services, including Resident, by owning, operating, managing, maintaining, and controlling GEORGIAN GARDENS HEALTHCARE LLC.

9.     Consequently, GEORGIAN GARDENS HEALTHCARE LLC, owed a duty to Resident to use reasonable care for Resident's safety while under the care and supervision at GEORGIAN GARDENS HEALTHCARE LLC.

## PRIME ADVISORY LLC

10.     PRIME ADVISORY LLC is a Missouri limited liability company.

11.     PRIME ADVISORY LLC was substantially engaged in the leasing, control, management, staffing, fiscal budgeting, oversight, risk management, regulatory compliance, implementation and enforcement of policies and procedures, consultation with and/or operation of the licensee, GEORGIAN GARDENS HEALTHCARE LLC by exercising final authority over (1) staffing budgets; (2) the development and implementation of nursing policies and procedures; (3) the hiring and firing of the administrator; (4) appointing the governing body that is legally responsible for establishing and implementing policies regarding the management and operation of GEORGIAN GARDENS HEALTHCARE LLC.

12.     These actions and decisions had a direct impact on the care provided to all residents including Resident and caused the injuries at issue in this lawsuit.

13.     Moreover, PRIME ADVISORY LLC operated, managed, maintained, and/or controlled GEORGIAN GARDENS HEALTHCARE LLC by binding the nursing home to contracts with related parties – as defined by the Centers for Medicare and Medicaid Services – for dollar amounts that far exceeded the fair value of those services and resulted in funds being diverted out of GEORGIAN GARDENS HEALTHCARE LLC that could and should have been utilized to hire enough nursing staff.

14.     These actions and business decisions had a direct impact on the care provided to all residents including Resident and caused the injuries at issue in this lawsuit.

15.     Consequently, PRIME ADVISORY LLC owed a duty to Resident to use reasonable care for Resident's safety while under her care and supervision at GEORGIAN GARDENS HEALTHCARE LLC.

## GATEWAY HEALTHCARE OF MISSOURI, LLC

16.     GATEWAY HEALTHCARE OF MISSOURI, LLC is a Missouri limited liability company.

17.     At all times relevant to this action, GATEWAY HEALTHCARE OF MISSOURI, LLC, and/or individuals or entities acting on its behalf, operated, managed, maintained, and/or controlled, in whole or in part, GEORGIAN GARDENS HEALTHCARE LLC.

18.     GATEWAY HEALTHCARE OF MISSOURI, LLC, and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled GEORGIAN GARDENS HEALTHCARE LLC by exercising final authority over:

  a.   Staffing budgets;

  b.   The development and implementation of nursing policies and procedures;

  c.   The hiring and firing of the administrator; and

  d.   Appointing the governing body that is legally responsible for establishing and implementing policies regarding the management and operation of GEORGIAN GARDENS HEALTHCARE LLC.

19.     These actions and business decisions had a direct impact on the care provided to all residents including Resident.

20.     Consequently, GATEWAY HEALTHCARE OF MISSOURI, LLC owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at GEORGIAN GARDENS HEALTHCARE LLC and breached said duty for all the reasons stated in this Complaint.

## MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE

21.     MO SNF Management LLC d/b/a Prime is a Delaware limited liability company.

22.     At all times relevant to this action, MO SNF Management LLC d/b/a Prime Healthcare, and/or individuals or entities acting on its behalf, operated, managed, maintained, and/or controlled, in whole or in part, GEORGIAN GARDENS HEALTHCARE LLC.

23.     MO SNF Management LLC d/b/a Prime Healthcare, and/or individuals or entities acting on its behalf, operated, managed, maintained, and controlled GEORGIAN GARDENS HEALTHCARE LLC by exercising final authority over:

    a.  Staffing budgets;

    b.  The development and implementation of nursing policies and procedures;

    c.  The hiring and firing of the administrator; and

    d.  Appointing the governing body that is legally responsible for establishing and implementing policies regarding the management and operation of GEORGIAN GARDENS HEALTHCARE LLC.

24.     These actions and business decisions had a direct impact on the care provided to all residents including Resident.

25.     Consequently, MO SNF Management LLC D/B/A Prime Healthcare owed a duty to Resident to use reasonable care for Resident's safety while under its care and supervision at MO SNF Management LLC D/B/A Prime Healthcare and breached said duty for all the reasons stated in this Complaint.

## DEFENDANTS' JOINT ENTERPRISE/VENTURE

26.     Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

27.      Defendants GEORGIAN GARDENS HEALTHCARE LLC; PRIME ADVISORY LLC; MO SNF Management LLC d/b/a Prime Healthcare; and GATEWAY HEALTHCARE OF MISSOURI, LLC ("Joint Venture Defendants") were engaged in a joint venture in that:

    a.  The Joint Venture Defendants had an agreement, express and/or implied, among the members of the group to operate GEORGIAN GARDENS HEALTHCARE LLC, a Missouri licensed nursing home;

    b.  The Joint Venture Defendants had had a common purpose to operate GEORGIAN GARDENS HEALTHCARE LLC, a Missouri licensed nursing home;

    c.  The Joint Venture Defendants had a community of pecuniary interest in the operation of GEORGIAN GARDENS HEALTHCARE LLC, a Missouri licensed nursing home; and

    d.  The Joint Venture Defendants had had an equal right to a voice in the direction of the operation of GEORGIAN GARDENS HEALTHCARE LLC, a Missouri licensed nursing home.

28.      There has been always a close relationship between the Joint Venture Defendants relevant.

29.      Because of the joint venture, the Joint Venture Defendants owed a joint duty to Resident to use reasonable care for their safety while under their care and supervision at GEORGIAN GARDENS HEALTHCARE LLC.

## JURISDICTION AND VENUE

30.      Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

31.      The members of the limited liability company GEORGIAN GARDENS HEALTHCARE LLC are:

    a.  Blue Sky Basin, LLC

    b.  DKDP Missouri, LLC

    c.   DKYH Missouri, LLC

    d.   Dovid Kleiner

    e.   Bernard Perlow; and

    f.   Sloans Lake Trust

32.    Elliot Berger is the sole member of Blue Sky Basin, LLC and is a citizen of New York state.

33.    The only members of DKDP Missouri, LLC are Dovid Kleiner and Bernard Perlow.

34.    Bernard Perlow and Dovid Kleiner are each citizens of New York state.

35.    Upon information and belief, the sole member of DKYH Missouri, LLC is Dovid Kleiner who is a citizen of New York state, thus making that entity a citizen of New York state.

36.    Upon information and belief, the trustee of Sloans Lake Trust is Dovid Kleiner, thus making that entity a citizen of New York state.

37.    Upon information and belief, the sole members of PRIME ADVISORY LLC are David Perlow and Eiliot Berger.  David Perlow is a citizen of New York state, thus making PRIME ADVISORY LLC a citizen of New York state.

38.    The sole members of GATEWAY HEALTHCARE OF MISSOURI, LLC are Blue Sky Basin; DKDP Misouri, LLC and DKYH Missouri, LLC.

39.    By way of the citizenship of Elliot Berger Dovid Kleiner and Bernard Perlo, GATEWAY HEALTHCARE OF MISSOURI, LLC is a citizen of the state of New York.

40.     Upon information and beleifge the sole member of MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE is Elliot Berger, thus, makaing that entity a citizen of New York.

41.     Plaintiff is is a citizen of Missouri

42.     Decedent was a citizen of the state of Missouri at the time of her death.

43.     Therefore, Plaintiff brings her claims contained in the Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

44.     Pursuant to RSMo § 506.500.1(3), defendants, purposefully availed themselves of the protections and/or benefits of the laws in Missouri by committing tortious acts within the state including, but not limited to, failing to ensure that GEORGIAN GARDENS HEALTHCARE LLC had appropriate policies and procedures for its nursing staff, was properly capitalized, funded, staffed, and that staff received adequate training and supervision, thereby making jurisdiction proper in this Court.

45.     A substantial part of the events or omissions giving rise to the claims described in the Complaint occurred in this District of Missouri, thereby making venue proper in this Court.

## AGENCY

46.     Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

47.     The acts hereinafter described were performed by the agents, representatives, servants, and employees of Defendants and were performed either with the full knowledge and consent of Defendants, and/or were performed by their agents, representatives, servants, or employees during the scope of their agency, representation, or employment with the Defendants.

48.     Furthermore, the acts hereinafter described as being performed by the agents, representatives, servants, or employees of Defendants were performed or were supposed to be performed on behalf of and/or for the benefit of Resident.

## FACTUAL BACKGROUND

49.     Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

### Defendants' Treatment of Resident

50.     Upon admission to GEORGIAN GARDENS HEALTHCARE LLC, Resident was at risk for developing skin breakdown, and pressure ulcers.

51.     Failure of GEORGIAN GARDENS HEALTHCARE LLC staff to offload Ms. Williams' sacral/coccyx caused development and progression of a pressure injury in this areas. The pressure applied to the heels and sacrum/coccyx area exceeded the tissue tolerance to pressure.

52.     Skin subjected to prolonged contact with urine and feces is more likely to break down.

53.    The sacral/coccyx pressure injury became infected, requiring hospitalization and antibiotic treatment. Sacral pressure injury infection resulted in severe sepsis/bacteremia.

54.    None of GEORGIAN GARDENS HEALTHCARE LLC staff, nor any other defendants conducted a Resident assessment to identify Resident's risk of developing skin breakdown.

55.    Despite Resident's risk, upon information and belief none of GEORGIAN GARDENS HEALTHCARE LLC staff, nor any other defendants implemented a Care Plan to address Resident's risk of developing a pressure ulcer nor did they implement a turning and repositioning program to offload the pressure on Resident's skin.

56.    Upon information and belief, none of GEORGIAN GARDENS HEALTHCARE LLC staff:

    a.   Properly assessed Resident's developing skin breakdown or pressure ulcers;

    b.   Implemented or provided the appropriate interventions to prevent Resident from developing a pressure ulcer or allowing Resident's pressure ulcer to get worse, including turning or repositioning Resident to offload the pressure on Resident's skin;

    c.   Monitored or evaluated Resident's Care Plan to see if the interventions prescribed were working; or

    d.   Monitored Resident's urine, skin condition, including Resident's pressure ulcer or measure its size during this time frame.

57.     Upon information and belief, at no point while Resident was a resident at GEORGIAN GARDENS HEALTHCARE LLC did any of GEORGIAN GARDENS HEALTHCARE LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from GEORGIAN GARDENS HEALTHCARE LLC, PRIME ADVISORY LLC, MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE; AND GATEWAY HEALTHCARE OF MISSOURI, LLC or any other staff member ever provide any sort of in-service training or clinical education to GEORGIAN GARDENS HEALTHCARE LLC staff regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcer or skin breakdown in residents like Resident.

58.     Upon information and belief, at no point while Resident was a resident at GEORGIAN GARDENS HEALTHCARE LLC did any of GEORGIAN GARDENS HEALTHCARE LLC management, including the Administrator, the Director of Nursing, the clinical education coordinator, anybody from GEORGIAN GARDENS HEALTHCARE LLC, PRIME ADVISORY LLC, MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE; AND GATEWAY HEALTHCARE OF MISSOURI, LLC or any other staff member ever implement the appropriate policies and procedures at GEORGIAN GARDENS HEALTHCARE LLC regarding the assessment, prevention, use of interventions, monitoring, and reporting of pressure ulcer in residents like Resident.

59.     Upon information and belief, while Resident was a resident at GEORGIAN GARDENS HEALTHCARE LLC, GEORGIAN GARDENS HEALTHCARE LLC did not have an adequate number of staff working daily at GEORGIAN GARDENS HEALTHCARE LLC to meet Resident's needs, perform the interventions required to prevent Resident's avoidable pressure ulcer or prevent the progression of Resident's pressure ulcer, or monitor and adequately supervise Resident's condition.

### Cost Reporting & Staffing Information

60.     Nursing facilities, like GEORGIAN GARDENS HEALTHCARE LLC, are required to submit an annual "Cost Report" to CMS, known as "CMS Form 2540-10".  The cost report is a financial report that identifies the cost and charges related to healthcare treatment activities in a particular nursing facility.

61.     Included with the cost reports are extensive details as to how much money the nursing facility spent on RNs, LPNs, and CNAs.  The cost reports reflect the patient census, hours paid, and the hourly rate that the nursing facility paid each category of direct caregivers.

62.     By dividing the paid hours by the patient census in the facility it is possible to determine how many hours the nursing facility paid for each category of direct caregivers per resident per day for the period covered by that cost report.  This number is referred to as the "reported HPPD".

63.     CMS allows the facilities to include all paid hours in the "reported HPPD."  Thus, that number does reflect true direct care hours, but is inflated because "hours paid" includes sick pay and vacation pay both of which reduce the amount of actual HPPD provided by caregivers to residents in nursing facilities.

64.     GEORGIAN GARDENS HEALTHCARE LLC was also required to report quarterly staffing information through the CMS "Payroll Based Journal" (PBJ) program.

65.     To determine more accurate direct-care hours, it is necessary to examine the data that nursing facilities use to track the number of hours their employee's work.  This information is easily accessed through reports that are commonly referred to as "Time Detail Reports", "Punch Detail Data Reports", or some other similarly named report depending on the time-keeping system used by the nursing facility.

66.     The more detailed Punch Detail or time records will note vacation or sick time paid and thus, reveal actual hours worked in the facility.  This information reveals a more accurate direct care number and allows the calculation of the actual HPPD for any period including a year, a quarter, a month, or a day.

67.     Upon information and belief, the staffing levels reported by GEORGIAN GARDENS HEALTHCARE LLC skilled nursing & therapy for the period Resident was at GEORGIAN GARDENS HEALTHCARE LLC were below the CMS expected levels derived from the MDS RUG rates which reflect actual acuity and not simply a resident census.

68.     Upon information and belief, the staffing levels reported by GEORGIAN GARDENS HEALTHCARE LLC skilled nursing & therapy for the period Resident was at GEORGIAN GARDENS HEALTHCARE LLC were below the CMS expected levels derived from the MDS RUG rates which reflect actual acuity and not simply a resident census.

### Undercapitalization/Underfunding at GEORGIAN GARDENS HEALTHCARE LLC

69.     GATEWAY HEALTHCARE OF MISSOURI, LLC, PRIME ADVISORY LLC, and GEORGIAN GARDENS HEALTHCARE LLC had a duty to provide financial resources and support to GEORGIAN GARDENS HEALTHCARE LLC in a manner that would ensure that each of their residents received the necessary care and services and attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with their residents' comprehensive assessments and plans of care.

70.     GATEWAY HEALTHCARE OF MISSOURI, LLC, PRIME ADVISORY LLC, and GEORGIAN GARDENS HEALTHCARE LLC had a duty to provide sufficient financial resources to ensure there was enough properly trained and supervised staff to meet the needs of their residents.

71.     Upon information and belief, GEORGIAN GARDENS HEALTHCARE LLC had no autonomy to decide their own financial course, including no authority to determine how much staff they could provide or what resources were available to the staff.

72.     Upon information and belief, no individuals at GEORGIAN GARDENS HEALTHCARE LLC are involved in decision making about the financial operations or what its resources were and where they would be spent.

73.     Transactions directed by PRIME ADVISORY LLC, MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE; AND GATEWAY HEALTHCARE OF MISSOURI, LLC left GEORGIAN GARDENS HEALTHCARE LLC with insufficient cash to provide sufficient qualified staff to meet the individual needs of the residents in their GEORGIAN GARDENS HEALTHCARE LLC during Resident's time there.

**LEGAL BASIS FOR PRIME ADVISORY LLC, MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE; AND GATEWAY HEALTHCARE OF MISSOURI, LLC's LIABILITY**

**Joint Venture/Enterprise**

74.     PRIME ADVISORY LLC, MO SNF MANAGEMENT LLC D/B/A PRIME HEALTHCARE; AND GATEWAY HEALTHCARE OF MISSOURI, LLC are collectively referred to herein as the "Corporate Defendants."

75.     The Corporate Defendants directed, operated, and managed the day-to-day functions of their nursing facilities – including GEORGIAN GARDENS HEALTHCARE LLC – by developing and implementing policies, practices and procedures affecting all facets of GEORGIAN GARDENS HEALTHCARE LLC, including resident care.

76.     These policies manipulate and control the physical and financial resources, and prohibit decision making at GEORGIAN GARDENS HEALTHCARE LLC level.

77.     This directly affects resident care by determining things such as what type and quality of nourishment is available for residents; what safety measures may and may not be used depending upon cost; the integrity of the building itself; and most importantly, how much staff is available to provide resident care and how well trained and supervised are the staff to meet the needs of the residents.

78.     These policies and practices were developed and implemented without regard to the needs of the residents and, in fact, mandated the reckless disregard for the health and safety of GEORGIAN GARDENS HEALTHCARE LLC's residents.

79.     The Corporate Defendants affirmatively chose and decided to establish such operations and demand they be implemented.

80.     Upon information and belief, such operations included, *inter alia*, the following dangerous policies and practices: (a) the aggressive recruitment and admission of high acuity patients to increase the patient census when Defendants had already chosen to understaff GEORGIAN GARDENS HEALTHCARE LLC and continually maintain a staff that were not qualified nor competent to provide the care required by state law, regulations and minimum standards of the medical community; and (b) the decision to retain residents whose needs exceeded the qualification and care capability of GEORGIAN GARDENS HEALTHCARE LLC's staff.

81.     The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (a) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (b) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

82.     The Corporate Defendants, conduct themselves in a manner which indicates a joint venture/enterprise amongst them, to wit:

      a.    The shared interest in the operation and management of nursing facilities;

      b.    The express and implied agreements amongst them to share in the profits and losses of such venture/enterprise; and

c. The obvious actions taken showing the cooperation in furthering the venture/enterprise operating and managing nursing facilities.

83.     Missouri law recognizes a joint venture/enterprise where the parties alleged to be partners in such venture/enterprise share a common interest in the property or activity or the joint venture; maintain agreements, either express or implied, to share in profits or losses of the venture/enterprise; and express actions or conduct showing cooperation in the project of the venture/enterprise.

84.     The Corporate Defendants share a common interest in the operation and management of nursing facilities, including GEORGIAN GARDENS HEALTHCARE LLC; maintain agreements to share in the profits or losses of the operation of nursing facilities described herein; and operate daily evincing conduct which indicates their cooperation in the venture of operating and managing nursing facilities for profit.

85.     The Corporate Defendants and GEORGIAN GARDENS HEALTHCARE LLC took direct, overt, and specific actions to further the interest of the joint enterprise.

86.     These actions were taken through a joint venture/enterprise or through the Corporate Defendants and GEORGIAN GARDENS HEALTHCARE LLC's officers, directors, managers and or employees.

87.     The Corporate Defendants had an equal right to share in the profits and to bear liability for, the joint venture/enterprise.

88.     Further, because the Corporate Defendants and GEORGIAN GARDENS HEALTHCARE LLC were dominated by each other, these entities had an equal right to direct or control their venture, as well as to direct or control the operation and management of GEORGIAN GARDENS HEALTHCARE LLC.

### Direct Participation/Individual Actions

89.     The Corporate Defendants were always material to this lawsuit in the business of managing, owning, and operating a network of nursing homes throughout the State of Missouri. One such nursing home was GEORGIAN GARDENS HEALTHCARE LLC where Resident was admitted for care and treatment.

90.     At all times material to this lawsuit, the Corporate Defendants were fully aware that the delivery of essential care services in each of their nursing homes – including GEORGIAN GARDENS HEALTHCARE LLC – hinged upon three fundamental fiscal and operational policies which were dictated by their choices on establishing and implementing such policies: (1) the determination of the numbers and expenditures on staffing levels; (2) the determination of the census levels within the nursing home; and, (3) payor mix.

91.     At all times material, the Corporate Defendants made critical operational decisions and choices which manipulated and directly impacted GEORGIAN GARDENS HEALTHCARE LLC's revenues, and expenditures.  More particularly, the Corporate Defendants determined:

   a.  The number of staff allowed to work in their chains of nursing homes including GEORGIAN GARDENS HEALTHCARE LLC;

   b.  The expenditures for staffing at the nursing homes including GEORGIAN GARDENS HEALTHCARE LLC;

     c.   The revenue targets for each nursing home including GEORGIAN GARDENS HEALTHCARE LLC;

     d.   The payor mix, and census targets for each nursing home including GEORGIAN GARDENS HEALTHCARE LLC;

     e.   Patient recruitment programs and discharge practices at each nursing home including GEORGIAN GARDENS HEALTHCARE LLC.

92.     All cash management functions, revenues and expenditure decisions at the nursing home level – including GEORGIAN GARDENS HEALTHCARE LLC – were tightly managed, directed, and supervised by the Corporate Defendants.

93.     It was the choices made by the Corporate Defendants which directly fixed the circumstances in the facilities and the level of care that could, and was, provided at the homes, including GEORGIAN GARDENS HEALTHCARE LLC.

94.     The Corporate Defendants formulated, established, and mandated the application and implementation of the policies regarding the staffing levels and expenditures, the census levels, and payor mix.

95.     The census edicts, marketing and admission practices, and resident discharge policies designed and mandated by the Corporate Defendants were implemented and such application was carefully supervised and enforced.

96.     Following the mandates, GEORGIAN GARDENS HEALTHCARE LLC functioned in accordance with them, filling empty beds, recruiting high acuity patients, and maintaining a census level and staffing level established and enforced as the Corporate Defendants deemed appropriate.

97.     Accordingly, such manipulation by the Corporate Defendants as to staffing and census were motivated by the financial needs of the Corporate Defendants and GEORGIAN GARDENS HEALTHCARE LLC as opposed to the acuity levels and needs of the residents as dictated by state and federal laws and regulations.

98.     Instead of abiding by their duty to care for the residents, the Corporate Defendants chose to be guided by financial motivation which was simply to increase revenues while restricting and/or reducing expenses.

99.     The Corporate Defendants, therefore, directly participated in a continuing course of negligent conduct, requiring GEORGIAN GARDENS HEALTHCARE LLC to recruit and retain heavier care, higher pay residents to GEORGIAN GARDENS HEALTHCARE LLC even though the needs of the patient population far exceeded the capacity of staff.

100.    At the same time, the Corporate Defendants chose to design, create, implement, and enforce operational budgets at GEORGIAN GARDENS HEALTHCARE LLC which dictated the level of care that could be provided and therefore deprived residents care, creating widespread neglect.

101.    In so doing, the Corporate Defendants disregarded, superseded, and violated the duties and responsibilities imposed on a licensed nursing home, in this case GEORGIAN GARDENS HEALTHCARE LLC, by the State of Missouri, and the federal government.

### Corporate Malfeasance

102.    The Corporate Defendants consciously chose not to implement safety policies, procedures and systems which would ensure that: (1) the acuity levels and needs of residents were consistent with the numbers and qualifications of direct caregivers; and (2) treatment/care prescribed by a physician was provided in accordance with state laws and professional standards.

103.    Accordingly, the Corporate Defendants, by their operational choices and decision making, and to satisfy their desire to grow profits, created a dangerous condition that caused harm to residents.

104.    These choices to establish and implement such policies and the conscious decision not to implement corrective actions or procedures disregarded the duties which the State of Missouri and federal government imposed upon the Corporate Defendants and GEORGIAN GARDENS HEALTHCARE LLC.

105.    Because the staffs were below necessary levels, and because the staffs that were present were not properly qualified or trained, the residents at GEORGIAN GARDENS HEALTHCARE LLC including Resident, failed to receive even the most basic care required to prevent catastrophic injury and death.  This negligence and resulting injuries ultimately led to and caused Resident's injuries and death as described above.

106.    During Resident's residency at GEORGIAN GARDENS HEALTHCARE LLC, Resident sustained physical injuries and died, as described in more detail above, because of the acts, omissions, decisions, and choices made by the Corporate Defendants in operating GEORGIAN GARDENS HEALTHCARE LLC.

107. During Resident's residency at GEORGIAN GARDENS HEALTHCARE LLC, the Corporate Defendants negligently failed to provide and/or hire, supervise and/or retain staff capable of providing Resident with a clean, safe, and protective environment, and that, because of this failure, Resident suffered neglect, abuse, severe personal injuries, conscious pain and suffering, and deterioration of Resident's physical condition as further described above. Ultimately, Resident died because of this failure.

108. The Corporate Defendants manage, operate, and direct the day-to-day operations of GEORGIAN GARDENS HEALTHCARE LLC and these Corporate Defendants are liable for this direct involvement in the operations of such GEORGIAN GARDENS HEALTHCARE LLC. These Corporate Defendants are therefore liable to the Plaintiff for the neglect of and injuries to Resident.

109. GEORGIAN GARDENS HEALTHCARE LLC and these Corporate Defendants have been named as Defendants in this lawsuit for their individual and direct participation in the torts and causes of action made the basis of this lawsuit, having:

    a. Chosen to disregard the duties and responsibilities which GEORGIAN GARDENS HEALTHCARE LLC, as a licensed nursing home, owed to the State of Missouri and its residents;

    b. Created the dangerous conditions described by interfering with and causing GEORGIAN GARDENS HEALTHCARE LLC to violate Missouri statutes, laws and minimum regulations governing the operation of said nursing home;

    c. Superseding the statutory rights and duties owed to nursing home residents by designing and mandating dangerous directives, policies, management, and day to day operation of GEORGIAN GARDENS HEALTHCARE LLC;

    d. Caused the harm complained of herein; and

e.   Choosing to disregard the contractual obligations owed to the State of Missouri and the Federal Government to properly care for the residents in exchange for payment of funds for such care.

### COUNT I - (Wrongful Death v. All Defendants)

110.   Plaintiff incorporates by reference the allegations previously set forth and further alleges as follows:

111.   This Count accrued after the August 28, 2015, effective date of the amendments to RSMo. § 538.210.1. *See Coover v. Moore*, 31 Mo. 574, 576 (Mo. 1862); *Cummins v. Kansas City Pub. Serv. Co.*, 66 S.W.2d 920, 929 (Mo. banc 1933); *Nelms v. Bright*, 299 S.W.2d 483, 487 (Mo. banc 1957); *Boland v. St. Luke's Health System, Inc.*, 471 GATEWAY HEALTHCARE OF MISSOURI, LLC 3d 703 (Mo. 2015) (banc).

112.   At all times material hereto Resident was in a defenseless and dependent condition.

113.   As a result of Resident's defenseless and dependent condition, Resident relied upon Defendants to provide for their safety, protection, care, and treatment.

114.   At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendants, and their agents and employees, owed a legal duty to Resident to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

115.   At all relevant times, Defendants had a duty to act in accordance with the standards of care required of those owning, operating, managing, maintaining, and/or controlling a skilled nursing facility.

116.    These duties required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of all residents including Resident.

117.    These duties required Defendants to have sufficient and qualified staff at GEORGIAN GARDENS HEALTHCARE LLC nursing home to ensure the proper care for, and treatment of all residents including Resident.

118.    These duties required Defendants to ensure that GEORGIAN GARDENS HEALTHCARE LLC's nurses and other staff were properly educated and trained regarding the care for, and treatment of all residents including Resident.

119.    These duties required Defendants to ensure that GEORGIAN GARDENS HEALTHCARE LLC was properly capitalized to ensure the proper care for, and treatment of all residents including Resident.

120.    Specifically, during their care and treatment of Resident, Defendants and their agents, servants, and/or employees breached their duties and were guilty of the following acts of negligence and carelessly by failing to measure up to the requisite standard of care, skill, and practice ordinarily exercised by members of their profession under the same or similar circumstances, including by:

    a.  Failing to adequately assess, monitor, document, treat, and respond to Resident's physical condition as well as Resident's skin condition;

    b.  Failing to adequately assess Resident's risk of developing skin breakdown and pressure ulcers;

    c.  Failing to have enough staff at the Facility to ensure Resident's needs were being met regarding skin care and pressure ulcer prevention;

    d.  Failing to provide adequate assistive devices and interventions to prevent Resident's skin breakdown and pressure ulcers;

    e.   Failing to enact and carry out an adequate Care Plan regarding Resident's increased risk for skin breakdown and pressure ulcers;

    f.   Failing to provide adequate preventative skin care to Resident;

    g.   Failing to provide adequate assistance and assistive devices to prevent Resident's skin breakdown and pressure ulcers;

    h.   Failing to appropriately assess and maintain clean and dry skin where Resident developed a pressure ulcer;

    i.   Failing to turn and reposition Resident every two (2) hours;

    j.   Failing to utilize proper procedures for scheduling of turning and repositioning;

    k.   Failing to adequately assess, monitor, ensure, and document the administration of adequate nutrition and hydration to Resident;

    l.   Failing to document the measurement of Resident's wounds adequately and concisely for proper and efficient wound treatment, management, and progression;

    m.  Failing to prevent the development and worsening of Resident's pressure ulcers;

    n.   Failing to adequately, timely and consistently prevent, assess, and treat Resident's pressure ulcer;

    o.   Failing to have and/or implement appropriate policies and procedures regarding the prevention, assessment, and treatment of pressures ulcers in residents like Resident;

    p.   Failing to carry out and follow standing orders, instructions, and protocol regarding the prevention of Resident's skin breakdown and pressure ulcers;

    q.   Failing to ensure the nursing home was properly capitalized.

    r.   Failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiff, but which is verily believed and alleged will be disclosed upon proper discovery procedures during this litigation.

121.   As a direct and proximate result of the individual and collective acts of negligence of Defendants as described above, Resident was harmed and suffered non-economic damages limited to death, pain, suffering, and mental anguish.

122.    As a direct and proximate result of the individual and collective acts of negligence of all Defendants as described above, Plaintiff, suffered non-economic damages limited to loss of companionship, loss of comfort, loss of guidance, loss of counsel and loss of instruction, pain, suffering, and mental anguish.

WHEREFORE, Plaintiff, prays for judgment against Defendants in an amount more than $75,000.00 and in an amount a jury deems fair and reasonable under the circumstances, limited to the noneconomic damages described above.

### PLAINTIFF'S DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE

Respectfully Submitted,

STEELE LAW FIRM

By:   */s/ Jonathan Steele*

Jonathan Steele MO #63266
2029 Wyandotte, Suite 100
Kansas City, MO 64108
Ph: (816) 466-5947
Fax: (913) 416-9425
jonathan@nursinghomeabuselaw.com

ATTORNEYS FOR PLAINTIFF